Susan F. Halman, State Bar No. 111511
David A. Evans, State Bar No. 181854
SELVIN WRAITH HALMAN LLP
505 14th Street, Suite 1200
Oakland, CA 94612
Telephone:  (510) 874-1811
Facsimile:   (510) 465-8976
E-mail:      shalman@selvinwraith.com
             devans@selvinwraith.com

Attorneys for Benchmark Insurance Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENCHMARK INSURANCE COMPANY, a Kansas corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>BDG DEVELOPMENT CORPORATION, a California corporation; BRIAN D. GILBERT, an individual; LOREE RODKIN, an individual; and, AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation;<br><br>  Defendants. | CASE NO.: 2:19-cv-7734<br><br>COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT |

Plaintiff BENCHMARK INSURANCE COMPANY, for its Complaint for Rescission, Declaratory Judgment and Reimbursement against defendants BDG DEVELOPMENT CORPORATION, BRIAN D. GILBERT, LOREE RODKIN and AMERICAN CONTRACTORS INDEMNITY COMPANY, states:

## I.   JURISDICTION AND VENUE

1.    This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C §1332, as the amount in controversy, exclusive of interest and costs, greatly

1

1  exceeds $75,000 and the parties are citizens of different states, and an actual justiciable

2  controversy exists between plaintiff and defendants within the meaning of 28 U.S.C.

3  §2201 regarding the scope and extent of insurance coverage provided under the

4  Benchmark policies issued to BDG DEVELOPMENT CORPORATION.

5        2.      Venue is proper in this district pursuant to 28 U.S.C §1391(b).

6  Jurisdiction is founded on diversity of citizenship, a substantial part of the events or

7  omissions giving rise to the claims occurred in this district and the defendants are

8  subject to personal jurisdiction in this district.

## II.  PARTIES

10        3.      Plaintiff BENCHMARK INSURANCE COMPANY ("Benchmark") is,

11  and at all times was, a Kansas corporation authorized to transact the business of

12  insurance in the State of California, with its principal place of business in Wayzata,

13  Minnesota.

14        4.      Defendant BDG DEVELOPMENT CORPORATION ("BDG") is, and at

15  all times herein mentioned was, a construction company organized and existing as a

16  corporation under the laws of the State of California, with its principal place of

17  business in the County of Ventura, California.

18        5.      Defendant BRIAN D. GILBERT ("Gilbert") is, and at all times herein

19  mentioned was, an individual residing in the City of Simi Valley, California.  At all

20  relevant times, Gilbert was an officer and director of BDG, and was licensed by the

21  State of California as a Class B General Building Contractor.

22        6.      Defendant LOREE RODKIN ("Owner") is, and at all times herein

23  mentioned was, an individual residing in West Hollywood, California, and owner of

24  the real property located at 9255 Doheny Road No. 2706, West Hollywood, California,

25  90069 (the "Residence"), on which BDG and its subcontractors performed renovation

26  work pursuant to a contract with Owner.  Owner is the plaintiff in an action titled

27  <u>Rodkin v. BDG Development Corporation, et al.</u>, Ventura County Superior Court,

28  Case No. 56-2018-00513202-CU-CO-VTA (filed June 8, 2018) (including all Cross-

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND
REIMBURSEMENT                      **CASE NO.: 2:19-cv-7734**

Complaints, "the Rodkin Action").

7.     Defendant AMERICAN CONTRACTORS INDEMNITY COMPANY ("ACIC") is, and at all times herein mentioned was, a surety company organized and existing as a corporation under the laws of the State of California, with its principal place of business in the County of Los Angeles, California.  Benchmark is informed and believes, and hereon alleges, that ACIC issued a contractors license bond to BDG. ACIC is a necessary party to this action because it has made claims against BDG and Gilbert in a Cross-Complaint in the Rodkin Action.

8.     The Owner is a necessary party to this action because she has made claims against BDG, Gilbert and ACIC in the Rodkin Action, and she is a potential judgment creditor of Benchmark's insureds, BDG and Gilbert.

9.     The Owner and ACIC are named as a defendants to this lawsuit to enable Benchmark to obtain a binding adjudication of Benchmark's rights, duties, and obligations under the commercial general liability policies issued by Benchmark to BDG with respect to any sums that may be awarded to the Owner on her Complaint and/or to ACIC on its Cross-Complaint and to bind all parties to this judgment.

### III.  THE BENCHMARK POLICIES

10.     Benchmark issued three consecutive commercial general liability insurance policies to BDG Development Company as follows:

a.     Policy No. BIC5011083, in effect from October 9, 2014 to October 9, 2015 ("2014-15 Policy").  A true and correct copy of the 2014-15 Policy is attached hereto as <u>Exhibit A</u>;

b.     Policy No. BIC5013227, in effect from October 9, 2015 to October 9, 2016 ("2015-16 Policy").  A true and correct copy of the 2015-16 Policy is attached hereto as <u>Exhibit B</u>; and

c.     Policy No. BIC5015249, in effect from October 9, 2016 to October 9, 2017 ("2016-17 Policy").  A true and correct

3

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT                                    **CASE NO.: 2:19-cv-7734**

copy of the 2016-17 Policy is attached hereto as <u>Exhibit C;</u> (referred to collectively as the "Policies").

11.     In its application for the 2014-15 Policy, and in its successive renewal applications for the 2015-16 Policy, and the 2016-17 Policy, BDG answered question nos. 76, 77, 78, 79 and 80 in the following manner:

| # | QUESTIONS | YES | NO |
|---|---|---|---|
| 76. | DO YOU NOW, AND WILL YOU DURING THE POLICY YEAR, HAVE A WRITTEN CONTRACT WITH EACH OF YOUR SUBCONTRACTORS WHICH HOLDS YOU HARMLESS RELATIVE TO WORK PERFORMED BY THE SUBCONTRACTOR? | √ | |
| 77. | ARE YOU NOW NAMED AS AN ADDITIONAL INSURED ON YOUR SUBCONTRACTORS' POLICIES, AND WILL YOU BE NAMED AS AN ADDITIONAL INSURED ON SUCH POLICIES DURING THE POLICY YEAR? | √ | |
| 78. | DO YOU HOLD OTHERS HARMLESS OR ARE YOU REQUIRED TO PROVIDE ADDITIONAL INSURED ENDORSEMENTS FOR OTHERS? | √ | |
| 79. | ARE YOUR SUBCONTRACTORS REQUIRED TO PROVIDE YOU WITH A CERTIFICATE OF INSURANCE BEFORE COMMENCING WORK, DEMONSTRATING THAT THEY HAVE GENERAL LIABILITY INSURANCE COVERAGE FOR THE POLICY YEAR? | √ | |
| 80. | DO YOU REQUIRE YOUR SUBCONTRACTORS TO MAINTAIN LIMITS OF LIABILITY OF AT LEAST $1,000,000 PER OCCURRENCE? | √ | |

12.     Based upon BDG's representations made in its policy applications, including but not limited to its responses to these questions, Benchmark issued:

(i)     the 2014-15 Policy for a premium charge of $4,000.00;

(ii)    the 2015-16 Policy for a premium charge of $4,000.00; and

(iii)   the 2016-17 Policy for a premium charge of $4,533.00.

4

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT                                         **CASE NO.: 2:19-cv-7734**

13. The introductory provisions in the Commercial General Liability Coverage Form issued with the Policies provide definitions of **you**, **your**, **named insured**, **we**, **us** and **our**, as these terms are used throughout the Policy:

> Throughout this policy the words **you** and **your** refer to the **named insured** shown in the Declarations, and any other person or organization qualifying as a **named insured** under this policy. The words **we**, **us** and **our** refer to the company providing this insurance.
>
> The word **insured** means any person or organization qualifying as such under Section II - Who Is An **Insured**.
>
> Other words and phrases that appear in bold face have special meanings as set forth in Section V - Definitions or as elsewhere defined in this policy.

14. The Policies state in the INSURING AGREEMENT for Coverage A. **Bodily Injury** and **Property Damage** Liability:

a. **We** will pay those sums that an **insured** becomes legally obligated to pay as **tort** damages for **bodily injury** or **property damage** to which this insurance applies. **We** will have the right and duty to defend an **insured** as defined in paragraphs (1) and (2) of Section II – Who Is An **Insured**, against any **suit** seeking those damages. …

15. In all of the Policies, paragraph b. of the INSURING AGREEMENT states:

b. This insurance applies to **bodily injury** and **property damage** only if:

   (1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

   (2) The **bodily injury** or **property damage** resulting from such **occurrence** first takes place during the **policy period**, regardless of when the **bodily injury** or **property damage** becomes known or apparent to anyone.

16. Paragraphs c. and d. of the INSURING AGREEMENT in each of the

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT    **CASE NO.: 2:19-cv-7734**

Policies state, in relevant part:

      c.     All **bodily injury** or **property damage** arising from an **occurrence**, or series of related **occurrences**, will be deemed to first take place at the time of the first such **bodily injury** or **property damage**, even though the **occurrence** giving rise to such **bodily injury** or **property damage** may be continuous or repeated exposure to the same generally harmful conditions, and even though the nature, type or extent of such **bodily injury** or **property damage** may be continuous, progressive, cumulative, changing or evolving, regardless of when the **bodily injury** or **property damage** becomes known or apparent to anyone.  If the date the **bodily injury** or **property damage** first took place cannot be determined, then the date of the **bodily injury** or **property damage** first took place will be deemed to be the earliest date of exposure to, or creation of, the condition, circumstance or process that led to the **bodily injury** or **property damage**.

      d.     **Our** duty to defend is further limited as provided in paragraphs (1), (2), (3) and (4) below.

. . .

      (3)     **We** will have no duty to defend any **insured** against any **suit** seeking damages to which this insurance does not apply.

. . .

    17.    Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS in each of the Policies states, in relevant part:

**We** have no duty to provide coverage or defense under this insurance unless **you** and any other involved **insured** have fully complied with each and every one of the conditions contained in this policy.

…

9.  REPRESENTATIONS

By accepting this policy, **you** agree:

    a.  The statements you made, or any person or organization made on **your** behalf, that appear in the declarations, application, audit(s), questionnaire(s) and inspection(s) are accurate and complete in all respects;

6

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT           **CASE NO.: 2:19-cv-7734**

b. **We** issued this policy in reliance upon **your** representations; and

c. Any false, misleading, inaccurate or incomplete statements or omissions made by **you**, or any person or organization made on **your** behalf will render this policy null and void as of the inception date of this policy.

18.     In all of the Policies, Section V – DEFINITIONS sets forth the special definitions for terms shown in bold font, including the following:

**5.     CLAIM**

**Claim** means a request or demand for money or services because of **bodily injury**, **property damage**, **personal injury** or **advertising injury**, received by **us** or an **insured**, including the service of **suit** or institution of arbitration or other proceedings against an **insured**.  …

**15.     OCCURRENCE**

**Occurrence** means an accident, including a continuous or repeated exposure to substantially the same generally harmful condition.

**17.     POLICY PERIOD**

**Policy period** means the term of this policy from its inception date to the earlier of its expiration date, shown in the declarations, or the date of any cancellation.

**19.     PRODUCTS-COMPLETED OPERATIONS HAZARD**

**Products-completed operations hazard**:

a. Includes all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

(1)     Products that are still in **your** physical possession; or

(2)     Work that has not yet been completed or abandoned.

b. **Your work** will be deemed completed at the earliest of the following times:

7

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND
REIMBURSEMENT                                        **CASE NO.: 2:19-cv-7734**

(1)     When all of the work called for in **your** contract has been completed.

…

(3)     When that part of the work done at a job site has been put to its intended use by any person or organization.

(4)     When **you** have stopped performing **your work** for any reason at, or been terminated from, the project or job site.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed even though a contract requires such service, maintenance, correction, repair or replacement.

…

20.    **PROPERTY DAMAGE**

**Property damage** means physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use will be deemed to occur at the time of the physical injury that caused it.  Loss of use of tangible property unaccompanied by physical injury to that property is not **property damage**.

21.    **SUIT**

**Suit** means a civil proceeding in which damage because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies is alleged.  **Suit** includes:

a.     An arbitration proceeding in which such damages are claimed and to which an **insured** must submit or does submit with **our** consent; or

b.     Any other alternative dispute resolution proceeding in which such damages are claimed and to which an **insured** submits with **our** consent.

8

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT                                         **CASE NO.: 2:19-cv-7734**

22. **TORT**

**Tort** means liability or damages that would be imposed by law in the absence of any contract or agreement.

23. **YOUR PRODUCT**

**Your product** means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (1) **You**;

    (2) Others trading under **your** name; or

    (3) A person or organization whose business or assets **you** have acquired.

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

b. The providing of or failure to provide warnings or instructions.

…

24. **YOUR WORK**

a. Means:

    (1) Work or operations performed by **you** or on **your** behalf; and

    (2) Work or operations performed by other parties subject to your management or supervision; and

    (3) Materials, parts or equipment furnished in connection with such work or operations.

9

     b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

        (2)    The providing of or failure to provide warnings or instructions.

19.    The Policies were issued with an endorsement titled "Subcontractor Special Conditions," which states:

> AS A CONDITION PRECEDENT TO THIS POLICY APPLYING TO ANY **CLAIM** IN WHOLE OR IN PART BASED UPON WORK PERFORMED BY SUBCONTRACTORS, **YOU** MUST HAVE, PRIOR TO THE DATE OF THE LOSS GIVING RISE TO THE **CLAIM**:
>
> (1)    RECEIVED A WRITTEN INDEMNITY AGREEMENT FROM THE SUBCONTRACTOR HOLDING **YOU** HARMLESS FOR ALL LIABILITIES, INCLUDING COSTS OF DEFENSE, ARISING FROM THE WORK OF THE SUBCONTRACTOR; AND
>
> (2)    OBTAINED CERTIFICATES OF INSURANCE FROM THE SUBCONTRACTOR INDICATING THAT **YOU** ARE NAMED AS AN ADDITIONAL INSURED ON A POLICY PROVIDING COVERAGE AT LEAST AS BROAD AS THE COVERAGE PROVIDED BY THIS POLICY, AND THAT THE PER OCCURRENCE LIMIT OF LIABILITY OF SUCH INSURANCE POLICY IS AT LEAST $1,000,000, UNLESS OTHERWISE AGREED IN WRITING BY **US**.
>
> (3)    **YOU** HAVE MAINTAINED THE RECORDS EVIDENCING COMPLIANCE WITH SUBSECTIONS 1 AND 2.
>
> THE INSURANCE PROVIDED BY THIS POLICY SHALL BE EXCESS OVER AND ABOVE ANY OTHER VALID AND COLLECTIBLE INSURANCE AVAILABLE TO **YOU** UNDER SUBSECTION (2).  A SUBCONTRACTOR'S FAILURE TO OBTAIN OR MAINTAIN ANY REQUIRED CONTRACTOR'S OR OTHER LICENSE SHALL NOT ALTER OR ELIMINATE THE REQUIREMENTS SET FORTH IN SUBSECTIONS (1), (2) AND (3) ABOVE.

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT         **CASE NO.: 2:19-cv-7734**

AS USED IN THIS ENDORSEMENT, A SUBCONTRACTOR IS ANY PERSON OR ENTITY PERFORMING WORK AT **YOUR** REQUEST OR UNDER AN AGREEMENT WITH **YOU**.

### IV.  THE UNDERLYING *RODKIN* ACTION

20.    In January 2015, the Owner and BDG entered into a contract for the renovation of the Residence.

21.    BDG served as the general contractor for renovation of the Residence and hired subcontractors to perform some or all of the construction work.

22.    ACIC issued a Contractor's Bond to BDG, which was in effect at all times relevant to the claims asserted in the Rodkin Action.

23.    The final inspection of the Residence by the building department occurred on or about October 16, 2017.

24.    On June 8, 2018, the Owner initiated the Rodkin Action against BDG and Gilbert, contractors Steven Wade Sagan and Eric Chesley, and sureties American Contractors Indemnity Company and Suretec Insurance Company, by filing a Complaint for Damages alleging causes of action for: Breach of Contract, Fraud and Conversion against BDG and Gilbert; Fraud against Sagan and Chesley; Indemnity on License Bonds against ACIC; and Payment of License Bonds against Suretec.  The Rodkin Action seeks damages because of the contractors' alleged negligent construction of the Residence, and other relief.  A true and correct copy of the Owner's Complaint for Damages is attached hereto as Exhibit D (hereafter, "Rodkin Complaint").

25.    The Rodkin Complaint alleges that the Owner hired BDG and Gilbert pursuant to an oral contract to perform renovation of the Residence, including: "Demolition, Design, Lighting, Electrical and Electric Fixtures, Plumbing and Plumbing Fixtures, Tile and Stone Work, Painting, Hardware, Architectural Plans, Permits, Heating and Air-Conditioning, Cabinetry, Window Tinting, Flooring, Custom Furniture, Disposal, Sanitation, Carpentry, Door and Windows, Glasswork, Window

11

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT                                                      **CASE NO.: 2:19-cv-7734**

Shades and Draperies, Audio/Visual Construction And Equipment [and] Alarm Systems."

26.     The Rodkin Complaint alleges that BDG and Gilbert were responsible for the hiring, payment and supervision of all subcontractors, would obtain estimates from and negotiate fees paid to all subcontractors, would issue payment to subcontractors and obtain written lien releases, would provide a signed written contract to Owner detailing the scope of the renovation and the cost, a list of all subcontractors, and a start date and completion date for the work, would provide written change orders, and would provide a periodic accounting.

27.     The Rodkin Complaint alleges that BDG and Gilbert breached the oral renovation contract in numerous respects, including "failing to perform their work, and to make certain that all subcontractors perform their work, in a professional, timely and competent manner," charging Owner for "corrections to the renovation that were needed due to errors on the part of BDG and/or BDG's subcontractors," and charging Owner "for work that needed to be redone due to unprofessional and shoddy workmanship on the part of BDG, Gilbert… and subcontractors hired by BDG [and] Gilbert."  The Rodkin Complaint alleges the Owner has suffered damages in excess of $3 million.

28.     The Rodkin Complaint alleges a claim of indemnity against ACIC, asserting BDG and/or Gilbert violated their obligations under BDG's contractor's license in performing work at the Residence in a defective manner, abandoning work at the Residence prior to completion, and refusing to correct or complete work upon a reasonable demand.  The Rodkin Complaint alleges ACIC is indebted to Rodkin for the penal sum of the license bond.

29.     BDG and Gilbert tendered their defense and indemnity of the Rodkin Complaint to Benchmark under the Policies.

30.     Benchmark accepted BDG's and Gilbert's tender of defense of the Rodkin Complaint, subject to a full reservation of rights to rely upon the terms, conditions and

1   exclusions to deny indemnity for damages sought by the Owners and to file a

2   declaratory relief action to obtain a judicial declaration resolving any coverage issues,

3   and to seek reimbursement of all sums paid to defend BDG and Gilbert in the Rodkin

4   Action.

5        31.    ACIC tendered the Rodkin Complaint to BDG and Gilbert, and filed a

6   Cross-Complaint against BDG, Gilbert, and Kathleen Gilbert (Gilbert's former wife)

7   alleging causes of action for Breach of Contract, Statutory Indemnity, Declaratory

8   Relief and Specific Performance.  The ACIC Cross-Complaint alleges that, pursuant to

9   the terms of the contractor's bond, cross-defendants are obligated to hold ACIC

10  harmless from any claims and demands of the Rodkin Complaint, including attorneys'

11  fees and costs.

12       32.    Benchmark contends there is no coverage for the claims asserted against

13  BDG and Gilbert in the Rodkin Complaint or in the ACIC Cross-Complaint under any

14  of the Policies because BDG failed to comply with conditions precedent to coverage

15  stated in the Subcontractors Special Conditions endorsement issued with the 2014-15

16  Policy, the 2015-16 Policy and the 2016-17 Policy (collectively, "the Endorsement), in

17  that:

18       (a)    BDG did not receive a written indemnity agreement from each and every

19              subcontractor BDG retained holding BDG harmless for all liabilities,

20              including costs of defense, arising from the work of each subcontractor;

21       (b)    BDG did not obtain certificates of insurance from each and every

22              subcontractor BDG retained indicating BDG was named as an additional

23              insured on each subcontractor's general liability policy providing

24              coverage at least as broad as the coverage provided by the Benchmark

25              Policies; and

26       (c)    BDG did not maintain records evidencing the required written indemnity

27              agreements and certificates of insurance.

28

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND
REIMBURSEMENT                                          **CASE NO.: 2:19-cv-7734**

33.    At no time did Benchmark agree to alter or waive any of the conditions precedent to coverage stated in the Endorsement and/or in Section IV – Commercial General Liability Conditions.

## FIRST CAUSE OF ACTION

### (Rescission)

34.    Benchmark realleges and incorporates herein by reference paragraphs 1 through 33 of the preceding allegations, as though fully set forth in this cause of action.

35.    Benchmark is informed and believes, and on that basis alleges, that statements made by BDG in its initial insurance application and in its renewal applications for the Policies about its practice of obtaining written contracts with subcontractors and about being named as an additional insured under its subcontractors' policies were materially false, were known to be false, and were concealed from Benchmark.  Specifically, Benchmark contends BDG materially misstated in each policy application that:

(a)    BDG had written contracts with each of its subcontractors which included hold harmless agreements;

(b)    BDG was named as an additional insured under each of its subcontractor's policies; and that

(c)    BDG required each of its subcontractors to provide BDG with a certificate of insurance prior to commencing work.

36.    BDG knew or should have known at the time of submitting the applications that the facts stated therein were false.  BDG submitted the applications stating it had written contracts with hold harmless agreements, was named as an additional insured on each of its subcontractor's policies, and had required each of its subcontractors to provide certificates of insurance, knowing it did not, and intending to induce Benchmark's reliance upon the information stated in the applications to agree to insure BDG under each of the Policies.

37.    Benchmark relied upon the truthfulness, completeness and accuracy of

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND
REIMBURSEMENT                                    **CASE NO.: 2:19-cv-7734**

1 BDG's representations in the applications for the Policies and, unaware of the falsity
2 of these representations, agreed to and did issue each of the Policies to BDG.

3       38.     If Benchmark had been accurately informed of the true facts, it would not
4 have issued any of the Policies and/or would not have issued any of the Policies on the
5 terms and conditions contained therein and/or would not have issued any of the
6 Policies for the amount of insurance premiums charged.  Pursuant to Section IV –
7 Commercial General Liability Conditions, paragraph 9. Representations, BDG's
8 misrepresentations on its policy applications render the Policies null and void *ab initio*.

9       39.     Benchmark hereby notifies BDG of Benchmark's intent to rescind each of
10 the Policies.  This pleading shall be deemed to constitute Benchmark's offer to repay
11 BDG a sum equal to all premiums received for the Policies, subject to an offset for all
12 sums paid by Benchmark to defend BDG and Gilbert in the Rodkin Action, in order to
13 return the parties to a position *status quo ante*.

14       40.     Benchmark prays for a judgment that each of the Policies is rescinded
15 based upon BDG's material misrepresentations in its insurance policy applications.

**SECOND CAUSE OF ACTION**

**(Declaratory Relief – No Duty to Defend Under All Policies)**

18       41.     Benchmark realleges and incorporates herein by reference paragraphs 1
19 through 40 of the preceding allegations, as though fully set forth in this cause of action.

20       42.     There is at present a controversy between Benchmark and the Defendants
21 in that Benchmark contends it has no potential duty under the Policies to indemnify
22 BDG and/or Gilbert for any damages sought by the Owner, including the damages
23 sought in the Rodkin Action, and, therefore, that Benchmark has never had and
24 currently has no duty to defend BDG and/or Gilbert against the Rodkin Action.

25       43.     Benchmark requests this Court to declare that it has no duty to defend
26 BDG and/or Gilbert against the Rodkin Action due to BDG's failure to fully comply
27 with the conditions precedent to coverage stated in the Endorsements by failing to
28 obtain from each and every subcontractor who performed work on the Residence both

15

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND
REIMBURSEMENT                                        **CASE NO.: 2:19-cv-7734**

a written indemnity agreement, as described in paragraph (1) of the Endorsements, a Certificate of Insurance indicating that BDG is named as an additional insured on each and every subcontractor's general liability insurance policy, as described in paragraph (2) of the Endorsements, and failing to maintain records evidencing compliance with paragraphs (1) and (2) as described in paragraph (3) of the Endorsements. BDG's failure to comply with the conditions precedent to coverage stated in the Endorsements has deprived Benchmark of its contractual rights to obtain full or partial participation from BDG's subcontractors and/or their insurers to pay the cost of defending BDG in the Rodkin Action. BDG's non-compliance is a material breach of each of the Endorsements issued with the Policies and, pursuant to Section IV – Commercial General Liability Conditions, paragraph 9. Representations, BDG's misrepresentations on its policy applications regarding its adherence to the business practices required by the Endorsement render the Policies null and void *ab initio*.

44.    A judicial declaration is appropriate at this time in order that Benchmark may ascertain its rights and duties pursuant to the Policies issued by Benchmark to BDG and so that the parties will be bound by the same interpretation of the Policies. Benchmark has no other adequate or speedy remedy at law, and a multiplicity of actions will be avoided by the Court's determination of said rights and obligations pursuant to the present action and this request for declaratory relief.

45.    Benchmark seeks a judicial declaration by this Court that Benchmark has no duty to defend BDG and/or Gilbert in the Rodkin Action.

### THIRD CAUSE OF ACTION

### (Declaratory Relief – No Duty to Indemnify)

46.    Benchmark realleges and incorporates herein by reference paragraphs 1 through 45 of the preceding allegations, as though fully set forth in this cause of action.

47.    There is at present a controversy between Benchmark and Defendants in that Benchmark contends there is no coverage under the Policies for the claims and/or the damages sought in the Rodkin Action and, therefore, Benchmark has no duty to

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT                                                    **CASE NO.: 2:19-cv-7734**

1    indemnify BDG and/or Gilbert for damages sought by the Owner and/or ACIC.

2    Plaintiff is informed and believes and thereon alleges that Defendants contend

3    otherwise.

4         48.    Benchmark requests this Court to declare there is no coverage under any

5    of the Policies for any of the damages sought by the Rodkin Complaint and, therefore,

6    that Benchmark has no duty to indemnify BDG and/or Gilbert in the Rodkin Action

7    under any of the Policies because BDG failed to fully comply with the conditions

8    precedent to the Endorsements, by failing to obtain from each and every subcontractor

9    who performed work on the Residence both a written indemnity agreement, as

10   described in paragraph (1) of the Endorsements, and a Certificate of Insurance

11   indicating that BDG is named as an additional insured on each and every

12   subcontractor's general liability insurance policy, as described in paragraph (2) of the

13   Endorsements, and failing to maintain records evidencing compliance with paragraphs

14   (1) and (2) as described in paragraph (3) of the Endorsements.  BDG's failure to

15   comply with the conditions precedent to coverage stated in the Endorsements has

16   deprived Benchmark of its contractual rights to obtain full or partial participation from

17   BDG's subcontractors and/or their insurers to indemnify BDG for the damages sought

18   by the Rodkin Complaint.  BDG's non-compliance is a material breach of each of the

19   Endorsements issued with the Policies and, pursuant to Section IV – Commercial

20   General Liability Conditions, paragraph 9. Representations, BDG's misrepresentations

21   on its policy applications regarding its adherence to the business practices required by

22   the Endorsement render the Policies null and void *ab initio*.

23        49.    A judicial declaration is appropriate at this time in order that Benchmark

24   may ascertain its rights and duties pursuant to the Policies and so that the parties will

25   be bound by the same interpretation of the Policies.  Benchmark has no other adequate

26   or speedy remedy at law, and a multiplicity of actions will be avoided by the Court

27   determining said rights and obligations pursuant to the present action and this request

28   for declaratory relief.

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND
REIMBURSEMENT                                    **CASE NO.: 2:19-cv-7734**

50.     Benchmark seeks a judicial declaration by this Court that Benchmark has no duty to indemnify BDG and/or Gilbert for damages sought by the Owner and/or ACIC in the Rodkin Action.

### FOURTH CAUSE OF ACTION

### (Reimbursement)

51.     Benchmark realleges and incorporates herein by reference paragraphs 1 through 50 of the preceding allegations, as though fully set forth in this cause of action.

52.     Benchmark contends that any and all damages to the Residence and/or sought in the Rodkin Action are a direct result of matters which are either outside of the grant of coverage of the Policies or are otherwise excluded.

53.     Benchmark is defending BDG and Gilbert against the Owner's Complaint and ACIC's Cross-Complaint, and has incurred and continues to incur attorneys' fees and costs on behalf of BDG and Gilbert.  Benchmark is providing the defense under a reservation of rights, including the right to seek reimbursement from BDG of attorneys' fees and costs paid by Benchmark in the defense of uncovered claims.

54.     To date, Benchmark has paid in excess of $43,996.82 for investigation of the Owner's and ACIC's claims and to defend BDG and/or Gilbert against the claims alleged in the Rodkin Action.  Benchmark has paid for attorneys' fees, costs and litigation expenses against uninsured causes of action.

55.     Benchmark is entitled to reimbursement of all sums it has paid to investigate and defend BDG and Gilbert against the claims asserted in the Rodkin Action, or in the alternative, reimbursement of all sums which are for uncovered claims, according to proof.

### PRAYER

WHEREFORE, Benchmark prays for judgment against Defendants, and each of them, as follows:

1.     For entry of judgment rescinding the Benchmark Policies BIC5011083, BIC5013227 and BIC5015249, under which Benchmark will repay BDG a sum equal

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND
REIMBURSEMENT                                    **CASE NO.: 2:19-cv-7734**

to all premiums received for the Policies, subject to an offset for all sums paid by Benchmark to defend BDG and Gilbert in the Rodkin Action, and returning the parties to a position *status quo ante*;

2.      For a judicial declaration that Benchmark has no duty to defend BDG and/or Gilbert against the Rodkin Complaint because BDG is in breach of each of the Policies by failing to comply with all of the terms and conditions precedent stated in each of the Endorsements;

3.      For a judicial declaration that Benchmark has no duty to indemnify BDG and/or Gilbert for any sums for which any of them may be found liable to the Owner because BDG is in breach of each of the Policies by failing to comply with all of the terms and conditions precedent stated in each of the Endorsements;

4.      For reimbursement of amounts paid by Benchmark to investigate and defend BDG and Gilbert against the Rodkin Action or, in the alternative, to investigate and defend BDG and/or Gilbert against uninsured claims, according to proof;

5.      For an award of costs; and

6.      For such other and further relief as the Court deems just and proper.


Dated: September 6, 2019              SELVIN WRAITH HALMAN LLP


                                      By: */s/ Susan F. Halman*
                                          Susan F. Halman
                                          David A. Evans
                                          Attorneys for Benchmark Insurance Company

291160

COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND REIMBURSEMENT                                    **CASE NO.: 2:19-cv-7734**